**Lansing, Michigan**

# Opinion

Chief Justice:　　Justices:
Marilyn Kelly　　Michael F. Cavanagh
　　　　　　　　Elizabeth A. Weaver
　　　　　　　　Maura D. Corrigan
　　　　　　　　Robert P. Young, Jr.
　　　　　　　　Stephen J. Markman
　　　　　　　　Diane M. Hathaway

FILED JULY 14, 2010

STATE OF MICHIGAN

SUPREME COURT

DANIEL ADAIR, a taxpayer of the
FITZGERALD PUBLIC SCHOOLS,
FITZGERALD PUBLIC SCHOOLS, a
Michigan municipal corporation, and others,

　　　　　Plaintiffs-Appellants,

v　　　　　　　　　　　　　　　No. 137424

STATE OF MICHIGAN, DEPARTMENT
OF EDUCATION, DEPARTMENT OF
MANAGEMENT AND BUDGET, and
TREASURER OF THE STATE OF
MICHIGAN,

　　　　　Defendants-Appellees.

DANIEL ADAIR, a taxpayer of the
FITZGERALD PUBLIC SCHOOLS,
FITZGERALD PUBLIC SCHOOLS, a
Michigan municipal corporation, and others,

　　　　　Plaintiffs-Appellees,

v　　　　　　　　　　　　　　　No. 137453

STATE OF MICHIGAN, DEPARTMENT
OF EDUCATION, DEPARTMENT OF
MANAGEMENT AND BUDGET, and

TREASURER OF THE STATE OF
MICHIGAN,

Defendants-Appellants.

BEFORE THE ENTIRE BENCH

KELLY, C.J.

This case involves the Headlee Amendment[1] and is before this Court for the third time.  Most of the legal issues have been resolved and appear in the discussion of facts and procedural history below.  The issues remaining are (1) whether plaintiffs must introduce evidence of a specific, quantified increase in costs resulting from a violation of the Headlee Amendment provision prohibiting unfunded mandates to establish entitlement to a declaratory judgment and (2) whether plaintiffs' suit has been "sustained" under Const 1963, art 9, § 32, enabling plaintiffs to recover attorney fees. We answer the first question in the negative and the second question in the affirmative. Therefore, we affirm in part and reverse in part the judgment of the Court of Appeals.

## I.  FACTS AND PROCEDURAL HISTORY

The Headlee Amendment is an initiative passed by Michigan voters in 1978. Among its provisions, Headlee added the following section to the Michigan Constitution:

> The state is hereby prohibited from reducing the state financed proportion of the necessary costs of any existing activity or service required of units of Local Government by state law. A new activity or service or an increase in the level of any activity or service beyond that required by existing law shall not be required by the legislature or any state agency of

---

[1] Const 1963, art 9, §§ 25 to 34.

2

units of Local Government, unless a state appropriation is made and disbursed to pay the unit of Local Government for any necessary increased costs. The provision of this section shall not apply to costs incurred pursuant to Article VI, Section 18.[2]

Shortly after the Headlee Amendment was ratified, the Legislature enacted legislation designed to implement it.[3]

The state has required Michigan public school districts to report certain information, including pupil counts and financial data, for many years. However, in 2000, the Governor issued Executive Order No. 2000-9, which established the Center for Educational Performance and Information (CEPI). EO 2000-9 became effective September 28, 2000. Along with later legislation, it required plaintiff school districts to actively participate in collecting, maintaining, and reporting various types of data. The state began warehousing this data in several discrete databases, the single record student database (SRSD), the financial information database (FID), the registry of educational personnel (REP), and the school infrastructure database (SID). Under MCL 388.1752,[4] in order to receive yearly funding, school districts must furnish all data that the state considers necessary for the administration of the State School Aid Act.[5]

---

[2] Const 1963, art 9, § 29.

[3] MCL 21.231 *et seq.*

[4] Currently, MCL 388.1752 provides, in part: "In order to receive funds under this act, each district and intermediate district shall also furnish to the center or the department, as applicable, the information the department considers necessary for the administration of this act . . . ."

[5] MCL 388.1601 *et seq.* Part of the "necessary" information is that needed for compliance with the CEPI recordkeeping and reporting requirements in MCL 388.1694a.

The information collected by the CEPI facilitates compliance with state reporting requirements and requirements imposed by the federal government.[6] In order to meet some of these requirements, the state must report data on a student-by-student, teacher-by-teacher, or building-by-building basis. This enables the state to receive federal funds under the No Child Left Behind Act.[7]

On November 15, 2000, plaintiffs filed the present suit in the Court of Appeals. Plaintiffs are 456 Michigan public school districts and a taxpayer from each district.[8] They alleged that the recordkeeping and reporting requirements in EO 2000-9 and MCL 388.1752 constituted an unfunded mandate and violated the provision of Const 1963, art 9, § 29 prohibiting unfunded mandates (the POUM provision). The parties stipulated midtrial that the database submissions listed in EO 2000-9 and the later legislation were not required until two years after the effective date of the executive order.

---

[6] See Center for Educational Performance and Information, <http://www.michigan.gov/cepi> (accessed July 6, 2010) ("Our initiatives in data collection and reporting facilitate school districts' compliance with the federal *No Child Left Behind Act of 2001* and the Michigan Department of Education's accreditation plan, *Education Yes!* CEPI is an office located within the Office of the State Budget.").

[7] PL 107-110, 115 Stat 1425. We note our holding in *Durant v Michigan*, 456 Mich 175, 199; 566 NW2d 272 (1997), that "there is no exception in [Const 1963,] art 9, § 29 for federal mandates, as long as the activity or service is mandated by state law."

[8] The parties stipulated that nine school districts would be "representative school districts" for purposes of discovery and trial. Those nine districts were the Ann Arbor Public Schools, the Birmingham Public Schools, the East Grand Rapids Public Schools, the Farmington Public Schools, the Forest Hills Public Schools, the Monroe Public Schools, the Oakland Schools, the School District of the City of Pontiac, and the Traverse City Area Public Schools.

In its first adjudication of plaintiffs' claims, the Court of Appeals concluded that the claims raised or that could have been raised in earlier suits were barred by res judicata. It also held that plaintiffs' other claims were barred because of releases the parties had executed or because the activities complained of did not implicate the POUM provision. The Court granted summary disposition to defendants on all claims.[9]

We granted leave to appeal and reversed in part the judgment of the Court of Appeals.[10] A majority of this Court agreed with the Court of Appeals that most of plaintiffs' claims were barred by res judicata or release or did not implicate the Headlee Amendment's POUM provision. However, we concluded that plaintiffs had sufficiently stated a claim on which relief could be granted in their recordkeeping claim. We remanded the case to the Court of Appeals for further proceedings on that claim.

On remand, the Court of Appeals concluded that plaintiffs had not provided documentary support for their claim that the CEPI requirements were an unfunded mandate. Consequently, it again granted summary disposition to defendants.[11] Plaintiffs again appealed, and we vacated the Court of Appeals' judgment and again remanded to that Court.[12] We directed the Court of Appeals to reevaluate plaintiffs' claim "under both

---

[9] *Adair v Michigan*, 250 Mich App 691; 651 NW2d 393 (2002) (*Adair I*).

[10] *Adair v Michigan*, 470 Mich 105; 680 NW2d 386 (2004) (*Adair II*).

[11] *Adair v Michigan (On Remand)*, 267 Mich App 583; 705 NW2d 541 (2005) (*Adair III*).

[12] *Adair v Michigan*, 474 Mich 1073 (2006) (*Adair IV*).

the 'new activity or service' and the 'increase in the [level] of any activity or service' prongs of Const 1963, art 9, § 29's prohibition of unfunded mandates . . . ."[13]

On second remand, the Court of Appeals appointed a special master to conduct fact-finding. The special master was instructed to determine

> whether the record-keeping obligations imposed on plaintiff school districts by MCL 388.1752 and Executive Order 2000-9 constitute either a new activity or service or an increase in the level of a state-mandated activity or service within the meaning of Mich Const of 1963, art 9, § 29's prohibition of unfunded mandates.[14]

The special master heard testimony in this case in 2007. On January 27, 2008, she filed an opinion, concluding that the recordkeeping requirements did present an increase in the level of activity required of plaintiff school districts beyond what was previously required. Therefore, she concluded that the requirements violated the POUM provision.

The Court of Appeals adopted the conclusions of law and factual findings of the special master with some modifications and entered a declaratory judgment in favor of plaintiffs.[15] The Court rejected plaintiffs' request for attorney fees under Const 1963, art 9, § 32, concluding that this suit "cannot be characterized has having been 'sustained'

---

[13] *Id.*

[14] *Adair v Michigan (On Second Remand)*, unpublished order of the Court of Appeals, entered April 18, 2006 (Docket No. 230858).

[15] *Adair v Michigan (On Second Remand)*, 279 Mich App 507; 760 NW2d 544 (2008) (*Adair V*).

6

within the meaning of § 32."[16]  Both plaintiffs and defendants appealed, and we granted

both applications for leave to appeal in part.[17]

## II.  STANDARD OF REVIEW

Questions involving the proper interpretation of a constitutional provision receive

review de novo.[18]  The proper interpretation and application of a statute is also a question

of law that we consider de novo.[19]

## III.  ANALYSIS

We have established that "[t]he primary and fundamental rule of constitutional or

statutory construction is that the Court's duty is to ascertain the purpose and intent as

expressed in the constitutional or legislative provision in question."[20]  When interpreting

constitutional provisions, we are mindful that the interpretation given the provision

should be "'the sense most obvious to the common understanding'" and one that

---

[16] *Id.* at 525.

[17] *Adair v Michigan*, 483 Mich 922 (2009).  We limited our grant of leave to appeal to the issues of (1) whether the prohibition of unfunded mandates in Const 1963, art 9, § 29 requires plaintiffs to prove specific costs, either through the reallocation of funds or out-of-pocket expenses, to establish their entitlement to a declaratory judgment and (2) whether plaintiffs are entitled to recover the "costs incurred in maintaining" this suit, pursuant to Const 1963, art 9, § 32.

[18] *People v Jackson*, 483 Mich 271, 277; 769 NW2d 630 (2009).

[19] *Eggleston v Bio-Med Applications of Detroit, Inc*, 468 Mich 29, 32; 658 NW2d 139 (2003).

[20] *White v City of Ann Arbor*, 406 Mich 554, 562; 281 NW2d 283 (1979).

"'reasonable minds, the great mass of the people themselves, would give it.'"[21] "[T]he intent to be arrived at is that of the people, and it is not to be supposed that they have looked for any dark or abstruse meaning in the words employed . . . ."[22]

Article 9, § 29 of the Michigan Constitution prohibits the state from placing two related but independent burdens on local governmental entities. First, the state may not reduce the state-financed proportion of the necessary costs of any existing activity or service that state law requires of local units of government. Second, no state agency, including the Legislature, may require a new activity or service by a local unit of government. It may not require an increase in the level of an activity or service beyond that required by existing law. If it imposes such a requirement, the state must appropriate and disburse funding to pay the local unit of government for any necessary increased costs. This Court has described the first requirement as the "maintenance of support" (MOS) provision and the second requirement as the "prohibition on unfunded mandates" or POUM provision.[23] These two requirements address different situations and involve

---

[21] *Traverse City Sch Dist v Attorney General*, 384 Mich 390, 405; 185 NW2d 9 (1971), quoting Cooley, Constitutional Limitations (emphasis omitted).

[22] *Traverse City Sch Dist*, 384 Mich at 405, quoting Cooley, Constitutional Limitations (emphasis omitted).

[23] *Adair II*, 470 Mich at 111, citing *Judicial Attorneys Ass'n v Michigan*, 460 Mich 590, 595; 597 NW2d 113 (1999).

different harms.[24]  Therefore, the analysis applicable to each differs.[25]  Only the POUM

provision is applicable in this case.

## A.  HEADLEE VIOLATIONS

A majority of this Court has held that to establish a violation of the POUM

provision, a plaintiff must show that "the state-mandated local activity was originated

without sufficient state funding after the Headlee Amendment was adopted or, if properly

funded initially, that the mandated local role was increased by the state without state

---

[24] *Durant v State Bd of Ed*, 424 Mich 364, 379; 381 NW2d 662 (1985) ("The first sentence [of Const 1963, art 9, § 29] is aimed at existing services or activities already required of local government.  The second sentence addresses future services or activities.").

[25] The dissent is correct that we have previously concluded that the MOS and the POUM provisions are subject to similar requirements.  *Post* at 7-8, quoting *Adair II*, 470 Mich at 120 n 13.  However, in *Adair II*, a majority of this Court also specifically outlined the differences in the standards for claims arising under the two provisions:

> [T]o establish a Headlee violation under the MOS clause, the plaintiffs must show "(1) that there is a continuing state mandate, (2) that the state actually funded the mandated activity at a certain proportion of necessary costs in the base year of 1978-1979, and (3) that the state funding of necessary costs has dipped below that proportion in a succeeding year." *Oakland Co v Michigan*, 456 Mich 144, 151; 566 NW2d 616 (1997) (opinion by KELLY, J.).  Under the POUM clause, they must show that the state-mandated local activity was originated without sufficient state funding after the Headlee Amendment was adopted or, if properly funded initially, that the mandated local role was increased by the state without state funding for the necessary increased costs. [*Adair II*, 470 Mich at 111.]

9

funding for the necessary increased costs."[26]  Also, as the dissent correctly notes, the state "need only fund mandates that will result in 'necessary increased costs.'"[27]

Const 1963, art 9, § 29 is a clear prohibition of state action: before the state imposes a new or increased activity or service on a local unit of government, it must appropriate funds to cover any necessary increased costs.  Left unanswered is who bears the burden of showing that the new or increased activity or service resulted in necessary increased costs.[28]

We conclude that to establish a violation of the POUM provision, a plaintiff must show that the state required a new activity or service or an increase in the level of activities or services.  If no state appropriation was made to cover the increased burden on local government, the plaintiff need not show the amount of increased costs.  It is then the state's burden to demonstrate that no state funding was required because the requirement did not actually increase costs or the increased costs were not necessary.[29]

---

[26] *Id.* at 111.

[27] *Post* at 8.

[28] Our Headlee caselaw does not answer this question.  The dissent asserts that it is a foregone conclusion that "it is the plaintiff's burden to show an increase in necessary costs."  *Post* at 15 (emphasis omitted).  The dissent cites nothing definitive in support of this proposition.

[29] However, if the state did appropriate funds for the new or increased activity or service, the plaintiff would likely have a higher burden in order to show a POUM violation.  Under those circumstances, the state would not have violated the POUM provision per se by failing to provide funding.  Because those circumstances are not presented in the instant case, we need not address this issue.

In this case we agree with the Court of Appeals that plaintiffs established a violation of the POUM provision. The recordkeeping requirements of EO 2000-9 and the later legislation mandate more activities than the law required before, which Const 1963, art 9, § 29 forbids, and the state did not fund them,[30] as the POUM provision requires.[31] Moreover, defendants did not show that plaintiff school districts' costs were not increased or that such costs were not "necessary" under MCL 21.233(6). Therefore, we affirm the Court of Appeals' judgment granting plaintiffs a declaratory judgment.

## 1. INCREASE IN THE LEVEL OF ANY ACTIVITY OR SERVICE

The special master concluded that, beginning in 2002, the recordkeeping requirements imposed for the CEPI constituted an increase in the level of activity beyond that previously required. It is undisputed that the state required plaintiff school districts to report some student information and financial data before the CEPI was established.

---

[30] It is undisputed that the state did provide a one-time appropriation to plaintiff school districts in 2002 for implementation of changes to the SRSD. We did not give the parties an opportunity to brief the issue of the relevancy of this appropriation. However, it is also undisputed that the state made no explicit appropriation for the increased activity involved in complying with the requirements for the SID, FID, or REP. Therefore, the 2002 appropriation is irrelevant to our analysis.

[31] We reiterate that this conclusion is entirely consistent with a majority of this Court's requirement in *Adair II* that plaintiffs "must show that the state-mandated local activity was originated without sufficient state funding after the Headlee Amendment was adopted . . . ." *Adair II*, 470 Mich at 111. Plaintiffs established that a state-mandated local activity, namely new and increased levels of data collection, originated from EO 2000-9. Plaintiffs further demonstrated that no state funding was appropriated to cover the new activity involved in implementing the SID, which had no predecessor before the issuance of EO 2000-9. The state also failed to appropriate any funding for the increased activity required to provide data for the FID and REP.

11

Therefore, the pertinent testimony on this issue involved the changes in the volume and specificity of information that the state required to be reported after implementation of the CEPI requirements.

Defendants assert that Const 1963, art 9, § 29 was not violated because the recordkeeping requirements did not constitute a state-mandated increase in the level of activities or services. However, the testimony adduced before the special master belies this argument. Ample testimony established that both the amount of information collected and the manner in which the information had to be reported after CEPI was significantly greater and more intensive than before.

For example, Deborah Piesz, the finance manager at the Birmingham Public Schools, testified that the reporting required for the FID was much more involved than it had been in the past. She stated further that the district was now required to "keep much more detailed information" than previously. Both Ms. Piesz and Daniel Behm, the superintendent of the Forest Hills Public Schools, testified that the school district collected the additional information solely to comply with the heightened state requirements imposed by the CEPI. They also stated that the districts would not have collected the information for their own purposes. Testimony from other personnel employed in the nine representative districts was substantially similar to that of Mr. Behm and Ms. Piesz.

Collecting "a large amount of data" or "much more detailed information" than was previously required constitutes an increase in the level of an activity under Const 1963, art 9, § 29; namely, the state-mandated collection, maintenance, and reporting of data to

12

the state.  Defendants identify no evidence that rebuts this simple fact or undercuts the veracity of any of the testimony taken before the special master.

## 2.  NO STATE APPROPRIATION

The evidence taken before the special master demonstrated that no state appropriation was made to fund plaintiff school districts' implementation of the reporting requirements of the REP, SID, or FID.  Nor was any appropriation made to provide for the school districts' ongoing duty to comply with the reporting requirements for all four databases.  Rather, the districts were expected to take monies from discretionary funds to cover the costs associated with their data-collection and reporting obligations.  The evidence established that each school district did that.

Hence, plaintiffs met their initial burden of showing a POUM violation by demonstrating an increase in the level of recordkeeping required of the school districts.  Moreover, they demonstrated that the state appropriated no funds to cover the implementation of these increased requirements.  Thus, plaintiffs are entitled to a declaratory judgment unless defendants demonstrate that plaintiff school districts' costs were not increased as a result of the requirements or that the costs incurred were not necessary.

## 3.  INCREASED COSTS

The next question is whether the increase in the recordkeeping requirements resulted in increased costs to plaintiff school districts.  Again, a vast amount of unchallenged testimony in the record establishes that plaintiff school districts incurred increased costs as a result of the CEPI requirements.  These increased costs involved

13

hiring additional personnel, reassigning existing staff to help meet the CEPI requirements, and purchasing computer software to enable compliance with them.

Testimony from administrative personnel working for the representative school districts established that personnel were required to work overtime to comply with the CEPI requirements. One of them, Sandy Kopelman, a secretary in the Birmingham Public Schools, stated that she worked overtime specifically to comply with the CEPI's additional reporting requirements. She stated that she had "never got overtime before."

Randall Monday, an assistant superintendent for the Monroe Public Schools, claimed that since the implementation of the CEPI requirements, he had to take more time to meet with the principal of each school within his district. He stated that the meetings required additional time because he and the principals had to sort out distinctions between the information required for the CEPI and the district's own reporting requirements. This diversion of manpower required so that the school districts could comply with the CEPI requirements constituted increased costs to the districts.[32]

---

[32] By way of illustration, consider a staff member who before implementation of the CEPI requirements needed to spend 20 hours a week collecting, maintaining, and reporting data required by the state. Assume that after the establishment of the CEPI, that staff member needed to spend 30 hours a week for the district to comply with the new requirements (presuming no contemporaneous cost savings elsewhere). The district incurred an increased "net cost" of 10 hours a week of that employee's wages.

The Headlee Amendment does not require the district to show that its actual expenditures increased. MCL 21.233(6) defines "necessary cost" as the "actual cost to the state if the state were to provide the activity or service . . . ." In this example, plaintiffs could show that the state would incur the cost of paying a qualified person for 10 hours to collect, maintain, and report the new data. Even without such a showing,

14

Mary Reynolds, the executive director of business services for the Farmington Public Schools, testified that her office lost staff after the CEPI requirements were implemented. Nevertheless, she testified that, because compliance with the CEPI requirements was state-mandated and needed for the district to receive other state funding, the district was forced to give priority to that work. As a result, she testified, "there are many other things that don't get done, don't get accomplished."

Therefore, the evidentiary record shows that the state forced plaintiff school districts to allocate staff time in order to comply with the CEPI requirements. The fact that MCL 388.1752 requires school districts to comply with the CEPI requirements to receive other funding further supports our conclusion. Defendants offered no evidence to rebut this conclusion.[33]

---

however, plaintiffs here demonstrated that the school districts' actual expenditures increased as a result of their efforts to comply with the CEPI requirements.

This hypothetical example is a simplified version of the stipulated testimony of administrative personnel from the various districts. For example, Francine Mershman, a secretary in the Birmingham Public Schools, testified that in June and August, she spent about 95 percent of her time on data entry for the CEPI. During the time for student count reports, she devoted 75 to 80 percent of her time to CEPI recordkeeping. Throughout the rest of the year, CEPI recordkeeping took approximately 30 to 40 percent of her time. When asked what percentage of her time would have been spent on data collection 10 years earlier, Ms. Mershman replied "probably 10%." She also stated that, although data collection previously increased at the end and beginning of the year, it still did not take "that much time." During most of the school year, therefore, Ms. Mershman spent 30 to 40 precent of her time on data collection post-CEPI, as compared to 10 percent pre-CEPI.

[33] Moreover, defendants concede that plaintiff school districts incurred at least some actual increased costs. They argue, however, that the increased costs were not

15

## 4. "NECESSARY" COSTS AND "NET COST"

Defendants claim that, even if the CEPI requirements mandated an increase in activities or services that increased plaintiff school districts' costs, those costs are not necessary increased costs. Defendants assert that plaintiffs failed to demonstrate that any additional costs incurred to comply with the requirements met the definition of "necessary cost" under MCL 21.233(6) and were not *de minimis* under MCL 21.232(4).[34]

---

necessary increased costs, asserting that "in those few instances where [plaintiffs] can actually point to an actual cost incurred, the costs were either *de minimis* or unnecessary."

[34] MCL 21.233 provides, in part:

(6) "Necessary cost" means the net cost of an activity or service provided by a local unit of government. The net cost shall be the actual cost to the state if the state were to provide the activity or service mandated as a state requirement, unless otherwise determined by the legislature when making a state requirement. Necessary cost does not include the cost of a state requirement if the state requirement satisfies 1 or more of the following conditions:

(a) The state requirement cost does not exceed a de minimus [sic] cost.

(b) The state requirement will result in an offsetting savings to an extent that, if the duties of a local unit which existed before the effective date of the state requirement are considered, the requirement will not exceed a de minimus [sic] cost.

(c) The state requirement imposes additional duties on a local unit of government which can be performed by that local unit of government at a cost not to exceed a de minimus [sic] cost.

(d) The state requirement imposes a cost on a local unit of government that is recoverable from a federal or state categorical aid program, or other external financial aid. A necessary cost excluded by this subdivision shall be excluded only to the extent that it is recoverable.

16

Finally, defendants and the dissent argue that plaintiffs cannot prevail because even if the school districts incurred necessary increased costs, they did not quantify the exact amount of those costs.

We reject defendants' argument because it would hold plaintiffs to an evidentiary burden that they need not meet. The language of Const 1963, art 9, § 29 provides a clear limitation on state action: an increase in the level of any activity or service beyond that required by existing law must not be required by the Legislature or any state agency. The only exception is if the state appropriates and disburses funds adequate to pay for necessary increased costs.

Neither Const 1963, art 9, § 29 nor MCL 21.233 suggests that plaintiffs bear the burden of proving precisely how much the school districts' costs increased as a result of the mandate. In fact, the language of MCL 21.233 implies the opposite. That section defines "necessary cost" as the "net cost of an activity or service provided by a local unit

---

(7) "New activity or service or increase in the level of an existing activity or service" does not include a state law, or administrative rule promulgated under existing law, which provides only clarifying nonsubstantive changes in an earlier, existing law or state law; or the recodification of an existing law or state law, or administrative rules promulgated under a recodification, which does not require a new activity or service or does not require an increase in the level of an activity or service above the level required before the existing law or state law was recodified.

MCL 21.232(4) defines "de minimus [sic] cost" as "a net cost to a local unit of government resulting from a state requirement which does not exceed $300.00 per claim."

17

of government." The "net cost" is defined as "the actual cost to the state if the state were to provide the activity or service mandated as a state requirement . . . ."

Nothing in the POUM provision expressly requires a plaintiff to establish that the increase in activities or services resulted in increased costs. Rather, a plaintiff need only establish that the state imposed on it a new or increased level of activity without providing any funding to pay for it. The burden then shifts to the state to show (1) that it is not required to pay for it because the new or increased level of activity did not result in increased costs or (2) that those costs were not "necessary" under MCL 21.233(6).

In evaluating whether the additional costs stemming from the increased level of activity were necessary, the question is this: Would there be a cost to the state if it, rather than the school districts, paid for the increased activity? MCL 21.232(4) defines a *de minimis* cost as a "net cost" to a local governmental unit resulting from a state requirement that is less than $300 a claim.

Notably, this $300 requirement has no temporal limitation. The special master specifically found that "it is clear that the increase in the shear [sic] amount of data initially overwhelmed the resources . . . ." It is implicit in this conclusion and supported by copious testimony, such as that discussed previously, that the additional costs incurred by each school district to comply with the CEPI requirements exceeded $300.[35]

---

[35] Reference to our previous example again provides a good illustration of the point. See note 32 of this opinion. Suppose a district must pay a qualified person for an additional 10 hours of work each week collecting, maintaining, and reporting the data required for CEPI compliance. Assuming an hourly wage as low as $8, the "actual cost" to the state would exceed $300 within a month's time.

18

Defendants cannot demonstrate any basis for concluding otherwise, nor did they offer evidence that the state's actual costs, were it to provide the activity, would be lower than were the school districts'.

### 5. PROOF OF SPECIFIC INCREASED COSTS

Another necessary inquiry related to the preceding issue is whether plaintiffs must produce evidence of specific dollar-amount increases in the costs incurred in order to comply with the CEPI requirements. We conclude that, when no legislative appropriation was made, a plaintiff does not have the burden to make such a showing to establish entitlement to a declaratory judgment under the POUM provision. This conclusion is axiomatic from the language of Const 1963, art 9, § 29, previous caselaw involving the Headlee Amendment, and the underlying purpose for seeking a declaratory judgment.

The terms "net cost" and "actual cost" suggest a quantifiable dollar amount. However, nothing in MCL 21.233 suggests that it was intended to change the burden of proof in Const 1963, art 9, § 29. The specific costs that would be incurred are defined by reference to what costs the state would incur if it had to pay for the increased costs itself. Thus, it is the Legislature's burden to demonstrate that those costs were not "necessary" under one or more of the exceptions in MCL 21.233(6)(a) to (d). Otherwise, the Legislature must determine what dollar amount is necessary, then appropriate that amount to the school districts.

This is so because MCL 21.233(6) defines "net cost" as "the actual cost to the state" if the state were to provide the activity or service required. Clearly, the Legislature

19

is in a position far superior to plaintiffs' to determine what the actual cost to itself would be if it performed the increased recordkeeping and reporting duties. Proofs on this point are easily accessible to the state because it could ascertain the costs it would incur if it provided the new activity. The dispositive issue is the cost to the state if it were to provide the new or increased activity or service, not the cost incurred by the local governmental unit.[36]

To impose such a requirement on plaintiffs would be illogical and inconsistent with the purposes of the POUM provision of the Headlee Amendment. We have noted that the POUM provision is intended to address future services and activities.[37] Plaintiffs in this case filed suit fewer than two months after EO 2000-9 took effect. The parties stipulated at trial that plaintiff school districts were not required to begin complying with the order's recordkeeping requirements until two years later.

Therefore, had this case been resolved in a timely fashion, EO 2000-9 would not have required plaintiffs to demonstrate specific amounts of necessary costs incurred.

---

[36] Thus, the dissent is mistaken in asserting that we require the state to prove what a local unit of government's increased costs were, making its appropriation obligations under the Headlee Amendment unclear. This is a recurring theme throughout the dissenting opinion. See *post* at 9 n 9 ("[T]he state will be required to audit every POUM plaintiff's books and . . . extensive and intrusive discovery of local budgetary information may have to occur."); *post* at 12 ("[T]he state is afforded no notice of what it must do to comply with the Headlee Amendment and is left only to guess at the size of the financial adjustment, and of the magnitude of the appropriation required . . . ."); *post* at 19 ("[E]stimated levels of accompanying appropriations will entail nothing more than speculation.").

[37] *Durant*, 424 Mich at 379.

Moreover, it would have been difficult for them to do so. Yet this Court specifically endorsed a prompt resolution of Headlee Amendment claims in *Durant*:

> As arduous as the proceedings in this case have been, we have succeeded in deciding many points of law that will guide future decisions. Thus, there is every reason to hope that future cases will be much more straightforward. *We anticipate that taxpayer cases filed in the Court of Appeals will proceed to rapid decision on the issue whether the state has an obligation under art 9, § 29 to fund an activity or service.*[38]

Finally, plaintiffs in this case seek a declaratory judgment, not monetary damages. An action for a declaratory judgment is typically equitable in nature and subject to different rules than other causes of action.[39] "The declaratory judgment rule was intended and has been liberally construed to provide a broad, flexible remedy with a view to making the courts more accessible to the people."[40] We have also consistently held that "a court is not precluded from reaching issues before actual injuries or losses have occurred."[41]

---

[38] *Durant*, 456 Mich at 205-206 (emphasis added).

[39] MCR 2.605 contains specific provisions governing actions for a declaratory judgment. MCR 2.605(A) empowers a court to "declare the rights and other legal relations of an interested party seeking a declaratory judgment, whether or not other relief is or could be sought or granted." MCR 2.605(C) states that "[t]he existence of another adequate remedy does not preclude a judgment for declaratory relief in an appropriate case."

[40] *Shavers v Attorney General*, 402 Mich 554, 588; 267 NW2d 72 (1978), citing 2 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), committee comment, p 683; see also *Revenue Comm'r v Grand Trunk W R Co*, 326 Mich 371, 375; 40 NW2d 188 (1949).

[41] *Shavers*, 402 Mich at 589; see also *Merkel v Long*, 368 Mich 1, 11-14; 117 NW2d 130 (1962).

Defendants claim that a finding of necessary increased costs cannot be established without a comparison between the specific net costs before and after the required change in activities. For the reasons stated previously, we reject this argument. Had this action proceeded to a prompt resolution, plaintiffs could not have demonstrated such a side-by-side comparison of the "before and after" costs incurred to meet the recordkeeping requirements. It would be nonsensical to impose this additional evidentiary requirement on plaintiffs here when, in another case, it would be impossible for the plaintiffs to make such a showing.

That this litigation was delayed long enough for plaintiff school districts to incur ascertainable increased costs is insufficient justification for holding plaintiffs to an evidentiary requirement they otherwise need not bear. Requiring plaintiffs to demonstrate specific costs is contrary to the purposes of an action for declaratory judgment under the POUM provision in Const 1963, art 9, § 29 and the language authorizing it.[42] The parade of potentially negative "consequences" of our holding to which the dissent refers does not alter these simple facts.[43]

---

[42] Defendants also argued in the lower courts that (1) their one-time $3.4 million appropriation in 2002 sufficiently covered the increased costs plaintiff school districts incurred to comply with the CEPI requirements and (2) the mandate was fully funded by the state's $3.5 billion appropriation of discretionary funds. Our order granting leave to appeal did not include these issues. Thus, we decline to address them here.

[43] *Post* at 18-20.

## B. ATTORNEY FEES

In their cross-appeal, plaintiffs argue that they are entitled to attorney fees under Const 1963, art 9, § 32 because they have been granted a declaratory judgment on their claim concerning the recordkeeping requirements. The Court of Appeals rejected this argument:

> Although plaintiffs have sustained their claim with regard to the data-collection and reporting requirements, it must be noted that this claim is but one of many plaintiffs initially raised in this action. Plaintiffs' other claims were rejected by this Court. *Adair*, 250 Mich App 691. This Court's decision with regard to those claims was sustained by our Supreme Court. *Adair*, 470 Mich 105. Under these circumstances, plaintiffs' suit cannot be characterized has having been "sustained" within the meaning of [Const 1963, art 9,] § 32. Accordingly, we decline plaintiffs' request for attorney fees.[44]

Plaintiffs' entitlement to attorney fees is evaluated under Const 1963, art 9, § 32. That section states:

> Any taxpayer of the state shall have standing to bring suit in the Michigan State Court of Appeals to enforce the provisions of Sections 25 through 31, inclusive, of this Article and, if the suit is sustained, shall receive from the applicable unit of government his costs incurred in maintaining such suit.

We previously held that the word "costs" in Const 1963, art 9, § 32 includes attorney fees incurred in litigating claims alleging a violation of the Headlee Amendment.[45] Therefore, if their "suit" has been "sustained," plaintiffs are entitled to attorney fees in addition to other costs incurred in maintaining the suit.

---

[44] *Adair V*, 279 Mich App at 525.

[45] *Macomb Co Taxpayers Ass'n v L'Anse Creuse Pub Sch*, 455 Mich 1, 10; 564 NW2d 457 (1997).

The word "suit" and the word "sustained" are not defined in the applicable provisions of the Michigan Constitution or in the Headlee implementing legislation. Thus, we again apply the rule of common understanding to ascertain the purpose and intent of Const 1963, art 9, § 32.

Black's Law Dictionary defines "suit" as "[a]ny proceeding by a party or parties against another in a court of law[.]"[46] A lay dictionary defines "suit" as "4. *Law.* a. an act or instance of suing in a court of law; lawsuit. b. a petition or appeal."[47] "Sustain" is defined as "to uphold as valid, just, or correct"[48] and "4. ([o]f a court) to uphold or rule in favor of . . . . 5. To substantiate or corroborate . . . ."[49]

Applying the definitions to this case, we disagree with the Court of Appeals that plaintiffs' suit has not been sustained. "Any proceeding" and "a petition or appeal" is broad language that encompasses a cause of action such as this one, in which 20 of plaintiffs' 21 original claims were dismissed. Therefore, although most of plaintiffs' claims were dismissed, plaintiffs' recordkeeping claim, standing alone, constituted a "suit" under Const 1963, art 9, § 32. The recordkeeping claim has been the only claim

---

[46] Black's Law Dictionary (8th ed).

[47] *Random House Webster's College Dictionary* (2001).

[48] *Id.*

[49] Black's Law Dictionary (8th ed).

litigated during the past six years.[50]  It would defy the common understanding of the word "lawsuit" to conclude that such prolonged litigation does not constitute a "suit" within the meaning of Const 1963, art 9, § 32.

Moreover, plaintiffs' recordkeeping claim, itself a suit as noted previously, has clearly been sustained.  The Court of Appeals granted plaintiffs the entirety of the relief sought on their claim—a declaratory judgment—which we affirm.  Consequently, this Court has upheld, ruled in favor of, validated, substantiated, or corroborated plaintiffs' suit.  We therefore reverse the judgment of the Court of Appeals on this issue.  Plaintiffs may recover attorney fees incurred during the litigation related to the recordkeeping claim only.

IV.  CONCLUSION

We affirm in part and reverse in part the judgment of the Court of Appeals.  The recordkeeping requirements of MCL 388.1752 and EO 2000-9 required an increase in the level of activities or services by plaintiff school districts over what was previously required.  Moreover, the increase resulted in increased costs that are more than *de minimis*.  In order to prevail, plaintiffs were not required to show a quantified dollar-amount increase in costs in excess of a *de minimis* amount.  Therefore, the recordkeeping requirements violate the POUM provision of the Michigan Constitution of 1963, at article 9, § 29.  The declaratory judgment in favor of plaintiffs is affirmed.

---

[50] In *Adair II*, a majority of this Court affirmed the Court of Appeals' dismissal of all of plaintiffs' claims except for the recordkeeping claim, ending litigation on those claims.  *Adair II*, 470 Mich at 133.

25

Finally, we conclude that plaintiffs' suit has been sustained within the meaning of Const 1963, art 9, § 32. Therefore, we reverse the Court of Appeals' judgment and hold that plaintiffs are entitled to the costs incurred in maintaining this action. Those costs include an award of reasonable attorney fees incurred in litigating the recordkeeping claim only. We remand this case to the Court of Appeals for a determination of costs and attorney fees to be awarded, and we do not retain jurisdiction.

CAVANAGH, WEAVER, and HATHAWAY, JJ., concurred with KELLY, C.J.

STATE OF MICHIGAN

SUPREME COURT

DANIEL ADAIR, a taxpayer of the
FITZGERALD PUBLIC SCHOOLS,
FITZGERALD PUBLIC SCHOOLS, a
Michigan municipal corporation, and others,

        Plaintiffs-Appellants,

v                                                                No. 137424

STATE OF MICHIGAN, DEPARTMENT
OF EDUCATION, DEPARTMENT OF
MANAGEMENT AND BUDGET, and
TREASURER OF THE STATE OF
MICHIGAN,

        Defendants-Appellees.

_____

DANIEL ADAIR, a taxpayer of the
FITZGERALD PUBLIC SCHOOLS,
FITZGERALD PUBLIC SCHOOLS, a
Michigan municipal corporation, and others,

        Plaintiffs-Appellees,

v                                                                No. 137453

STATE OF MICHIGAN, DEPARTMENT
OF EDUCATION, DEPARTMENT OF
MANAGEMENT AND BUDGET, and
TREASURER OF THE STATE OF
MICHIGAN,

        Defendants-Appellants.

_____

MARKMAN, J. (*dissenting*).

I respectfully dissent from the majority's conclusion that plaintiff school districts are entitled to a declaratory judgment holding that that the recordkeeping requirements of MCL 388.1752 and Executive Order No. 2000-9 violate the prohibition of unfunded mandates (POUM) provision of Const 1963, art 9, § 29. I dissent because the majority has erroneously interpreted the burden of proof necessary to establish a violation of the POUM provision. The majority errs by holding that a POUM plaintiff need only show a new or increased level of activity for which there is no funding. It further errs by stating that if a plaintiff makes such a showing, the plaintiff is entitled to prevail *unless the state* proves that costs were not increased or that such increased costs were not "necessary." Finally, the majority errs by holding that a POUM plaintiff need not submit proof of specific costs. As explained hereafter, the burden of proof remains on a POUM plaintiff at all times and requires the plaintiff to prove with specificity an increase in necessary projected or actual costs.

I would reverse the judgment of the Court of Appeals and remand for entry of summary disposition for defendants on the ground that plaintiffs failed to establish a POUM violation because they failed to submit proof of specific "necessary increased costs" through the reallocation of funds or out-of-pocket expenses required by the new recordkeeping requirements.[1] There are significant practical consequences to the

---

[1] The majority also holds that plaintiffs are entitled to recover their costs, including attorney fees, as prevailing parties because one of their 21 claims was

2

majority's interpretation that over time will transform the Headlee Amendment from a provision limiting public expenditures into a provision facilitating such expenditures.

## I. FACTS AND HISTORY

Plaintiffs are 456 local Michigan school districts in their corporate capacity, together with one individual taxpayer from each district. This appeal is the culmination of plaintiffs' Headlee Amendment claim that the state has imposed new data collection and reporting requirements on local school districts without providing the necessary funding for the increased costs of those mandates.[2] Plaintiffs filed an original declaratory judgment action in the Court of Appeals on November 15, 2000, alleging 21 separate violations of the Headlee Amendment, specifically Const 1963, art 9, § 29, which, in its second sentence, contains a prohibition of unfunded mandates.[3] This Court eventually determined that only one of plaintiffs' claimed violations was potentially viable, and we remanded the case to the Court of Appeals, directing it to reevaluate plaintiffs' recordkeeping claim under Const 1963, art 9, § 29. *Adair v Michigan*, 470 Mich 105; 680 NW2d 386 (2004); *Adair v Michigan*, 474 Mich 1073 (2006).

---

sustained. Because I find that plaintiffs should not prevail on the merits, I do not join this part of the majority's opinion either.

[2] EO 2000-9 established the Center for Educational Performance and Information (CEPI) and required plaintiff school districts to actively participate in collecting, maintaining, and reporting various types of related data.

[3] The Headlee Amendment vests original jurisdiction in the Court of Appeals for claims arising under its provisions. Const 1963, art 9, § 32. Special pleading requirements for such actions are found in MCR 2.112(M).

The Court of Appeals subsequently appointed a special master who heard testimony in 2007, some five years after the recordkeeping requirements took effect. The special master determined that plaintiffs had proved their POUM claim-- even though she also determined that plaintiffs had adduced "little evidence of local districts or [intermediate school districts] incurring actual additional costs or expenditures as a result" of these requirements. The Court of Appeals adopted most of the special master's factual findings and conclusions of law and entered a declaratory judgment in favor of plaintiffs. *Adair v Michigan (On Second Remand)*, 279 Mich App 507; 760 NW2d 544 (2008). In particular, the Court of Appeals held that to demonstrate a POUM violation, plaintiffs only needed to establish

> (1) an increase in the level of activity or services mandated by the state and (2) a complete failure on the part of the state to provide any funding to offset the necessary costs to be incurred by the districts in the provision of the increased level of services or activities. [*Id*. at 515.]

Defendants appealed in this Court, arguing that plaintiffs had not proved the specific dollar amount of any actual costs or expenses resulting from the recordkeeping requirements and that the Court of Appeals had erred by concluding that a plaintiff need not demonstrate particularized increased costs in order to sustain a POUM claim. We granted leave to appeal, asking the parties to brief "whether the prohibition of unfunded mandates in Const 1963, art 9, § 29, requires the plaintiffs to prove specific costs, either through the reallocation of funds or out-of-pocket expenses, in order to establish their entitlement to a declaratory judgment . . . ." *Adair v Michigan*, 483 Mich 922 (2009).

4

## II. HEADLEE AMENDMENT

The Headlee Amendment is an initiative passed by Michigan voters in 1978. The first sentence of Const 1963, art 9, § 29 states:

> The state is hereby prohibited from reducing the state financed proportion of the necessary costs of any existing activity or service required of units of Local Government by state law.

The second sentence of Const 1963, art 9, § 29 adds:

> A new activity or service or an increase in the level of any activity or service beyond that required by existing law shall not be required by the legislature or any state agency of units of Local Government, unless a state appropriation is made and disbursed to pay the unit of Local Government for any necessary increased costs.

The first sentence addresses existing services or activities required of local units of government, and the second sentence addresses future services or activities. Claims under the first sentence are known as "maintenance of support" or "MOS" claims. Claims under the second sentence are known as "prohibition of unfunded mandates" or "POUM" claims. This appeal involves only a POUM claim. Under the language of the second sentence, a POUM plaintiff must show "increased costs" that are "necessary" to fulfill a state mandate for a new or increased activity or service.[4] Thus, in the case at bar, one must assess (1) whether the recordkeeping requirements resulted in increased costs to

---

[4] We did not grant defendants' application for leave to appeal the Court of Appeals' determination that the recordkeeping requirements amounted to both new and increased levels of activities and services. We also did not grant leave to appeal to consider defendants' argument that this case should not be viewed as a POUM case because of a 2002 appropriation.

plaintiff school districts and, if so, (2) whether the incurrence of these costs was necessary to comply with the recordkeeping requirements.

## III. HEADLEE STATUTE

The Headlee implementing act, 1979 PA 101, MCL 21.231 *et seq*., defines "necessary cost" as "the net cost of an activity or service provided" and "net cost" as "the actual cost to the state if the state were to provide the activity or service mandated as a state requirement . . . ." MCL 21.233(6).[5] The Headlee implementing act also provides that a necessary cost does not include a cost that does not exceed a *de minimis* amount, which is defined as a cost that does not exceed $300 a claim. MCL 21.233(6)(c); MCL

---

[5] MCL 21.233(6) provides, in part:

"Necessary cost" means the net cost of an activity or service provided by a local unit of government. The net cost shall be the actual cost to the state if the state were to provide the activity or service mandated as a state requirement, unless otherwise determined by the legislature when making a state requirement. Necessary cost does not include the cost of a state requirement if the state requirement satisfies 1 or more of the following conditions:

(a) The state requirement cost does not exceed a de minimus [sic] cost.

(b) The state requirement will result in an offsetting savings to an extent that, if the duties of a local unit which existed before the effective date of the state requirement are considered, the requirement will not exceed a de minimus [sic] cost.

(c) The state requirement imposes additional duties on a local unit of government which can be performed by that local unit of government at a cost not to exceed a de minimus [sic] cost.

6

21.232(4).[6] Therefore, considering the Headlee implementing act in evaluating whether plaintiff school districts' additional costs were necessary, the relevant question is whether there would be an increase in the actual cost to the state if it were to provide the activity or service itself. Also, a cost incurred by a local unit of government because of a state mandate does not become a necessary cost if it is *de minimis*.

## IV. ANALYSIS

## A. MOS VERSUS POUM CLAIMS

This Court held in *Durant v State Bd of Ed*, 424 Mich 364, 379; 381 NW2d 662 (1985), and *Oakland Co v Michigan*, 456 Mich 144; 566 NW2d 616 (1997), that a plaintiff bringing a claim under the MOS provision must demonstrate the actual costs of the mandated services. However, following the lead of the Court of Appeals, the majority holds here that POUM plaintiffs, in contrast with MOS plaintiffs, need not demonstrate either projected or actual costs. The majority's only explanation for why POUM plaintiffs should have a lower burden of proof comes in its assertion that the two sentences of Const 1963, art 9, § 29 address different situations and, therefore, that a different analysis applies to each.

I disagree. In *Durant*, 424 Mich at 379, we explained that the two sentences of Const 1963, art 9, § 29 must be read together "[b]ecause they were aimed at alleviation

---

[6] MCL 21.232(4) provides:

> "De minimus [sic] cost" means a net cost to a local unit of government resulting from a state requirement which does not exceed $300.00 per claim.

7

of two possible manifestations of the same voter concern . . . ." We specifically reiterated this point in *Schmidt v Dep't of Ed*, 441 Mich 236, 250-251; 490 NW2d 584 (1992), and *Judicial Attorneys Ass'n v Michigan*, 460 Mich 590, 598 n 2; 597 NW2d 113 (1999). Indeed, in the very case at bar, we have stated:

> Although *Oakland Co* dealt with MOS claims, as we noted in *Judicial Attorneys Ass'n, supra* at 598 n 2, that does not make it "inapplicable to an analysis of the second sentence of § 29." Thus, the requirements of POUM claims are, in this respect, similar to MOS claims. [*Adair*, 470 Mich at 120 n 13.]

While MOS claims are aimed at existing services or activities already required of a local unit of government and POUM claims address future services or activities, both provisions require *a claimant* to quantify the necessary costs of state-mandated activities. The fact that this case is one for a declaratory judgment and not a claim for money damages[7] does not and cannot change the constitutional requirement that the state need only fund mandates that will result in "necessary increased costs."[8] If plaintiffs are not

---

[7] In this regard, I note that when this Court remanded this case to the Court of Appeals in 2006, Chief Justice KELLY included a separate statement indicating that she would remand so that the Court of Appeals "can rule on the merits and *find damages*, if any." *Adair*, 474 Mich at 1074 (KELLY, J., concurring) (emphasis added). Plaintiffs, however, are not seeking damages.

[8] Const 1963, art 9, § 29. Pursuant to MCR 2.605(A), a court may issue a declaratory judgment, and a court "is not precluded from reaching issues before actual injuries or losses have occurred." *Shavers v Attorney General*, 402 Mich 554, 589; 267 NW2d 72 (1978). But this allowance cannot be used to reduce a plaintiff's burden of proof for the cause of action for which it is seeking a declaration. As we stated in *Associated Builders & Contractors v Dep't of Consumer & Indus Servs Dir*, 472 Mich 117, 126; 693 NW2d 374 (2005), the "actual controversy" and the "interested party" requirements of MCR 2.605(A)(1) mean that a party seeking a declaratory judgment must have a concrete and particularized actual injury in fact. The "particularized" requirement

required to demonstrate that a state requirement will, in fact, result in the actual reallocation of funds or out-of-pocket expenses, then there has been no showing of any necessary increased costs that will be incurred.

## B. THE MAJORITY'S ANALYSIS

The Court of Appeals held that plaintiffs only had to show a complete failure to provide funding for an increased or new level of services or activities in order to prevail as POUM plaintiffs. *Adair*, 279 Mich App at 514-515. The majority itself seems to agree, stating:

> [A] plaintiff need only establish that the state imposed on it a new or increased level of activity without providing any funding to pay for it. The burden then shifts to the state to show (1) that it is not required to pay for it because the new or increased level of activity did not result in increased costs or (2) that those costs were not "necessary" under MCL 21.233(6).

This formulation, however, is inconsistent with Const 1963, art 9, § 29. A POUM plaintiff must establish more than the state's failure to fund an increase or new level of service or activity. Under the majority's standard, the s*tate* will be required to prove that a POUM plaintiff's new or increased level of activity did not result in increased costs or that the increased costs were not necessary.[9] There is no basis for shifting this burden of

_____

surely reinforces the idea that Headlee plaintiffs are required to quantify their "necessary increased costs."

[9] One has to wonder how the *state* will ever be able to "prove" what a *local* unit of government's costs were. It would appear that the state will be required to audit every POUM plaintiff's books and that extensive and intrusive discovery of local budgetary information may have to occur. The majority disputes the notion that its holding will require the state to prove what a local unit of government's increased costs are. This disavowal seems misplaced since the majority specifically states that once a POUM

9

proof onto the state.[10] The prohibitory language in Const 1963, art 9, § 29 in no way indicates that a plaintiff merely has to show an unfunded new or increased level of activity and the burden will then shift to the state to prove that no increase in costs occurred or that any increased costs were not necessary. Once again, nothing in Const 1963, art 9, § 29 supports the majority's conclusion that the burden ever shifts away from the plaintiff onto the state. In addition, if plaintiffs are not required to establish a net increase in costs, this could result in litigation every time the state requires reporting, technology, or format changes. The majority's holding fails to recognize that *a POUM plaintiff must show* that its *necessary costs increased*. The majority's formulation never inquires whether a plaintiff has shown an increase in costs. Rather, it only inquires whether a POUM plaintiff has shown an unfunded new or increased level in an activity or service.[11] The majority's standard also fails to require a POUM plaintiff to prove that increased costs were necessary. It simply assumes the existence of necessary increased

plaintiff meets its initial burden, it is entitled to a declaratory judgment "unless defendants demonstrate that *plaintiff school districts' costs were not increased* as a result of the requirements" and that one of the questions before us is "whether the increase in the recordkeeping requirements resulted in increased costs *to plaintiff school districts.*" *Ante* at 13 (emphasis added).

[10] Indeed, HB 5800, which is pending in the Michigan House of Representatives, includes language that would shift the burden of proof onto the state to prove compliance with §§ 25 to 31 of article 9 of the state constitution. See proposed MCL 600.308e(2).

[11] To be clear, my point is that the majority's formulation fails to require a POUM plaintiff to show an increase in necessary costs. The fact that the majority believes there were, in fact, proofs of increased costs in this case does not change the fact that its legal formulation relieves future POUM plaintiffs of having to establish an increase in necessary costs. This Court is attempting to formulate the *law*, and not to merely resolve the instant case.

costs whenever there has been a mandated increase in an activity or service absent funding (unless the state can prove otherwise). In order to show an "increase" in costs, there must be some determination of a baseline level and a comparison of before-and-after numbers-- whether real or projected.[12] This is the only way a POUM plaintiff can show whether an increase has actually occurred. Finally, the majority's standard also fails to take into account that some increased costs that are necessary may nonetheless be *de minimis* under MCL 21.232(4). This is directly contrary to *Oakland Co*, 456 Mich at 165 ("[T]he trial court must decide what costs are necessary . . . costs, including whether any fall within the de minimus [sic] exclusion.").

When this case was before us in 2004, we cited with approval the following language:

> "[F]uture plaintiffs must allege the type and extent of the harm so that the court may determine if a § 29 violation occurred for purposes of making a declaratory judgment. In that way, the state will be aware of the financial adjustment necessary to allow for future compliance." [*Adair*, 470 Mich at 119-120 (citation omitted).][13]

Notwithstanding our earlier statement that a POUM plaintiff must allege both the "type" and "extent" of harm, and under MCR 2.112(M) must do so with "particularity," the majority today inconsistently adopts a standard that relieves a POUM plaintiff of having

---

[12] Surely this is "'the sense most obvious to the common understanding'" and one that "'reasonable minds, the great mass of the people themselves, would give it.'" *Traverse City Sch Dist v Attorney General*, 384 Mich 390, 405; 185 NW2d 9 (1971), quoting Cooley, Constitutional Limitations (emphasis omitted).

[13] Indeed, in 2007 we placed this very language into MCR 2.112(M), which provides, in relevant part: "In an action involving Const 1963, art 9, § 29, the plaintiff must state with *particularity* the *type* and *extent of the harm* and whether there has been a violation of either the first or second sentence of that section." (Emphasis added.)

11

to make any such showings. As we indicated in 2004, this deprives the state of threshold information on the basis of which to make necessary financial adjustments. Under the formulation the majority adopts today, the state is afforded no notice of what it must do to comply with the Headlee Amendment and is left only to guess at the size of the financial adjustment, and of the magnitude of the appropriation required, in order to comply with an adverse declaratory judgment.[14]

## C. "INCREASED COSTS"

Notwithstanding the majority's holding that a POUM plaintiff need only prove an increase in an activity or service in conjunction with an absence of funding, the majority *does* acknowledge the paucity of evidence of increased costs to which the special master referred.[15] However, in the vacuum left by plaintiffs themselves in failing to offer evidence of increased costs, the majority has apparently scoured the voluminous record in this case and has uncovered the following examples of increased costs: (1) the need to hire additional personnel, (2) the need to reassign staff or pay them overtime to help meet the recordkeeping requirements, and (3) the need to purchase and update computer software.

---

[14] Indeed, when we remanded this case to the Court of Appeals in 2006, we instructed it to "apply the provisions of MCL 21.231 *et seq.* and the definitions contained therein." *Adair*, 474 Mich at 1074. Notwithstanding, the Court of Appeals failed altogether to discuss the *de minimis* exception of MCL 21.232(4).

[15] Once again, the special master specifically stated that plaintiffs had adduced "little evidence" of local districts' "incurring actual additional costs or expenditures as a result" of the new recordkeeping requirements.

When examined, this "evidence" falls short of establishing a net increase in necessary costs. First, plaintiffs did not submit actual evidence of the costs allegedly spent for additional staff. Indeed, there was no testimony whatsoever establishing a baseline against which one could compare the alleged increase in staff costs.[16] Second, while there was testimony about purchasing new software and updating software, nothing in the record established that plaintiff school districts were, in fact, required to purchase or update that software. As the special master said, "some local districts and [intermediate school districts] incurred actual costs for programming changes, *but most did not . . . .*" (Emphasis added.) Therefore, it is difficult to conclude that those schools that did incur such costs did so *necessarily*. Finally, concerning evidence of increased overtime time costs, only a single witness testified about the receipt of less than $100 for such overtime, a clearly *de minimis* amount.

The majority asserts that the increase in costs on the part of plaintiff school districts exceeded the *de minimis* threshold of $300. While there was indeed testimony to that effect, the majority's formulation improperly relieves *future* plaintiffs of having to prove that their net increase in costs was more than *de minimis*, notwithstanding the Headlee implementing act's provision that a "necessary cost" does not include a cost that does not exceed $300 a claim. MCL 21.232(4); MCL 21.233(6).

---

[16] There was no evidence comparing costs incurred to report data before the creation of the CEPI with costs incurred to report data afterward.

The majority correctly observes that MCL 21.233(6) provides that the "net cost" shall be the "actual cost to the state if the state were to provide the activity or service . . . ."[17] Yet it fails to note that plaintiffs made no effort to show what the costs to the state would have been if the state itself had provided the increased recordkeeping.[18] Thus, plaintiffs' claim should also be denied for failure to present any evidence establishing a net increase in costs.

The majority concedes that the statutory terms "net cost" and "actual cost" "suggest a quantifiable dollar amount." Yet, inexplicably, it proceeds to dispense with this concession and holds that a POUM plaintiff need not quantify the plaintiff's actual necessary increased costs. The majority even goes so far as to state that "it is the

---

[17] A question was asked at oral argument regarding whether the definition of "net cost" in MCL 21.233(6) is consistent with Const 1963, art 9, § 29, which contemplates an increase in cost to a *local unit* of government as opposed to the cost the *state* would incur. Plaintiffs' counsel responded by stating that this issue had not even been indirectly raised in this case. He also declined the opportunity to argue that the statutory definition of "net cost" is compatible with the constitution. Under these circumstances, I will not further address the issue other than to observe that it might well be argued that the statute defines "net cost" by reference to hypothetical costs to the state only as a *proxy* for determining whether the required new or increased activity or service will impose actual necessary increased costs on the local unit of government. In any event, subdivisions (a) to (c) of MCL 21.233(6) require us to look at the "actual" costs to the local unit of government to determine whether they are *de minimis* or are offset by other savings. See note 5 of this opinion.

[18] The transcript from oral argument indicates the following exchange:

> [*Question to plaintiffs' counsel*]: [D]id you put in proofs of what it would cost the state to do the CEPI reporting?

> [*Answer*]: No, we did not your honor.

Legislature's burden to demonstrate that those costs were not 'necessary' under one or more of the exceptions in MCL 21.233(6)(a) to (d)." But under Const 1963, art 9, § 29, it is the *plaintiff's* burden to show an increase in necessary costs. For the majority to relieve a POUM plaintiff of the obligation to show increased costs, and that such increased costs were necessary, is contrary to Const 1963, art 9, § 29. The majority has no authority to reduce plaintiffs' burden of proof or to place the burden on the state to prove that costs did not increase or that any increased costs were unnecessary. By its reallocation of these burdens, the majority effectively eliminates the requirement that a POUM plaintiff prove that the increased costs were necessary. This is in direct contravention of the language of our constitution, which only requires reimbursement of "any necessary increased costs." Const 1963, article 9, § 29. That provision makes clear that the ratifiers of the Headlee Amendment did not intend that the state be required to enact an appropriation when a local unit of government has not proved specific necessary increased costs associated with a new or increased level of activity or service.

### E.  QUANTIFYING COSTS

Despite 10 days of testimony from at least 17 witnesses, plaintiffs made no effort to quantify the school districts' necessary increased costs. This is not surprising in view of the fact that plaintiffs believed, incorrectly in my judgment, that they were under no obligation to make such a showing. The majority overlooks this failure of proofs and holds that a POUM plaintiff is not required to quantify its necessary increased costs because a POUM claim for declaratory judgment is designed only to challenge a mandate before it takes effect. The majority further suggests that if this case had proceeded to a

15

prompt resolution, plaintiffs could not have provided costs incurred before and after implementation of the recordkeeping requirements. That is, plaintiffs should not be required to show the school districts' before-and-after costs when it would have been impossible at a sufficiently early juncture to do so, even though plaintiffs could have shown before-and-after costs following the several-year delay that occurred before presenting evidence to the special master.

The majority's suggestion that it might be "impossible" for a litigant in a declaratory judgment action to show an anticipated increase in necessary costs is mistaken.[19] Civil plaintiffs routinely prove entitlement to future economic damages,[20] and schools routinely adopt budgets that project future costs and expenses. The Uniform Budgeting and Accounting Act, MCL 141.421 *et seq*., mandates a budgeting system for various local governmental units in Michigan, which include public schools. MCL 141.422d(4); MCL 141.434. MCL 141.435(1) provides:

> The recommended budget shall include at least the following:
>
> (a) Expenditure data for the most recently completed fiscal year and estimated expenditures for the current fiscal year.

---

[19] See, e.g., *Durant v Dep't of Ed (On Third Remand)*, 203 Mich App 507, 514; 513 NW2d 195 (1994), in which the Court of Appeals said that "actual costs would be satisfactory as a prima facie indicator of 'necessary costs,'" "whether based on realized costs or theoretical costs . . . ."

[20] See, e.g., M Civ JI 50.06 (future damages); M Civ JI 53.03 (future damages—non-personal-injury action); Patek, McLain, Granzotto & Stockmeyer, 1 Michigan Law of Damages and Other Remedies (ICLE), § 4.10, pp 4-7 to 4-10 (discussing of future-earning-capacity claims); *id.*, § 10.10, p 10-9 (discussing future damages).

(b) An estimate of the expenditure amounts required to conduct, in the ensuing fiscal year, the government of the local unit, including its budgetary centers.

MCL 141.422a(4) further provides: "'Budget' means a plan of financial operation for a given period of time, including an estimate of all proposed expenditures from the funds of a local unit and the proposed means of financing the expenditures." Thus, in the case of a mandated *increased* activity or services, a POUM plaintiff that has its claim heard before actual increased expenses have been incurred need simply present evidence explaining how much it is currently spending to perform the service or activity and how much extra, i.e., the projected amount of "increase," it anticipates it will have to spend carrying out the increased level of service or activity. And in the case of mandated *new* activities or services, a plaintiff need only present evidence that it currently spends *no* money on the service or activity, but anticipates incurring specific necessary costs that are not *de minimis* once the mandate becomes effective. Given that estimates of increased expenses are ordinarily quantified in budgets, it is reasonable to conclude that a witness can summarize and provide a reasonable estimate of an anticipated increase in necessary costs.[21] Ideally, a POUM claim will be decided before the projected necessary cost increases become actual increases. But in situations such as the case at bar, where plaintiff school districts had been complying with the mandates for several years before

---

[21] Although plaintiffs were not required to show the exact dollar amount of underfunding for school districts statewide, they were required to show a quantified projected increase in necessary costs beyond those that were *de minimis*, i.e., the particularized extent of the harm suffered, and they did not.

17

trial, actual necessary increased costs, if they exist, should not be difficult, much less insurmountable, to establish. In any event, proof of specific necessary increased costs, projected or actual, is essential in order to verify the legitimacy of a POUM claim.[22]

## V. CONSEQUENCES

Apart from the fact that the majority's interpretation is contrary to the law and the Michigan Constitution, there are significant practical consequences to their interpretation that will transform the Headlee Amendment over time from a provision limiting public expenditures into a provision facilitating such expenditures. As we stated in *Durant*, 424 Mich at 378, the Headlee Amendment "was proposed as part of a nationwide 'taxpayer revolt' in which taxpayers were attempting to limit" state spending. The "voters . . . were striving to gain more control over their own level of taxing and over the expenditures of the state." *Id.* at 383. "Headlee is fundamentally a taxpayers' amendment, enacted for the primary purpose of relieving the electorate from overwhelming and overreaching taxation." *Durant v Michigan*, 456 Mich 175, 214; 566 NW2d 272 (1997).

First, under the majority's reduced burden of proof, a POUM plaintiff will be entitled to prevail in a declaratory judgment action whenever the state has mandated an

---

[22] To be sure, plaintiffs may have established that the new requirements are burdensome and require additional staff time. However, this is not the equivalent of the considerably more specific, and rigorous, requirements of our constitution. The majority is mistaken when it asserts that Const 1963, art 9, § 29 does not suggest that POUM plaintiffs must prove how much their costs increased. To reiterate, the word "increase" clearly implies the necessity of before-and-after numbers. By providing such numbers, a POUM plaintiff can satisfy the constitutional requirement that it show how much its necessary costs have increased.

18

unfunded increase in the level of an activity or service and the state cannot establish that costs did not increase or that any increase was not necessary. Yet under the actual language of Const 1963, art 9, § 29, a POUM plaintiff is entitled to prevail only if it can show that some increase in the level of an activity or service was necessary and that it was not *de minimis*. As a result, the Legislature will effectively be required to enact an accompanying appropriation to every statute that mandates an increase in the level of an activity or service-- even if there are no necessarily increased costs, and even if any such increased costs are merely *de minimis*-- unless it is willing to undertake the risk that the state will eventually be able to sustain in court its burden of proof that a POUM plaintiff's costs did not increase or that any such increased costs were not necessary.

Second, under the majority's new standards, the Legislature in future Headlee Amendment situations will be likely to *overestimate* the necessary levels of accompanying appropriations when it has mandated an increased level of activity or service. This is because, in the absence of proofs by a local unit of government that it has incurred quantifiable costs, estimated levels of accompanying appropriations will entail nothing more than speculation. The cost of an underestimated appropriation by the state will be to invite litigation and to risk paying a POUM plaintiff's attorney fees if that litigation is lost. Better, then, to overestimate and thereby avoid litigation and attorney fees. That is, the guesswork introduced into the Headlee Amendment process by the majority, and the attendant budgetary uncertainties on the state's part, can only have an adverse fiscal impact on the very persons that the amendment was designed to protect-- the taxpayers.

19

Third, local units of government, which in the past may have simply absorbed reasonable expenses stemming from mandates by either working harder or more efficiently, are now incentivized to maintain the status quo and file lawsuits in response to all new mandates on the grounds that each such mandate has imposed additional obligations or costs. The majority's standards create an incentive for local units of government to litigate Headlee Amendment claims on the theory that every new mandate has unconstitutionally burdened that local unit, rather than incentivizing the local unit to make do with existing resources by working in a harder or more efficient manner to absorb such burdens.

Finally, litigation expenses will only increase as a consequence of the majority's Headlee Amendment process. The dismantlement of the quantification requirement, the erosion of the "necessary" and "*de minimis*" conditions for a Headlee claim, the distortion of burden-of-proof obligations, and the general sense of uncertainty caused by the elimination of traditional obligations of POUM plaintiffs to prove their claims will all lead inevitably to increased litigation between the state and local units of government. I need not dwell at great length on the obvious fact that in such litigation, public entities are involved on both sides, and the taxpayers are responsible for the costs of litigation and attorney fees on both sides.

## VI. CONCLUSION

Consistently with article 9, § 29 of the Michigan Constitution and the Headlee implementing act, I would hold that POUM plaintiffs must prove specific necessary increased costs, projected or actual, that are more than *de minimis* in order to establish

20

their entitlement to declaratory judgment under the POUM provision. For all the reasons set forth above, I would reverse the judgment of the Court of Appeals and remand for entry of summary disposition for defendants on the ground that plaintiffs failed to establish a POUM violation because they failed to submit proof of specific necessary increased costs through the reallocation of funds or out-of-pocket expenses required by the state's new recordkeeping requirements.

CORRIGAN and YOUNG, JJ., concurred with MARKMAN, J.

21